104920-2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.

JENNIFER LYNN INGHAM
SHELLEY, individually, and as a
Member of SOURCED SINGULARITY,
LLC,

    Plaintiffs,

v.

OTIS RAY JACOBS, V, individually,
and as a Member of SOURCED
SINGULARITY, LLC, and SEAN
LAMONT HAMILTON, individually and
as a Member of SOURCED
SINGULARITY, LLC,

    Defendants.
_____/

## **COMPLAINT**

Plaintiff, JENNIFER LYNN INGHAM SHELLEY, individually, by and through her undersigned counsel, hereby sues Defendants, OTIS RAY JACOBS, V, individually, and as a Member of SOURCED SINGULARITY, LLC, and SEAN LAMONT HAMILTON, individually, and as a Member of SOURCED SINGULARITY, LLC, and alleges:

**PARTIES, JURISDICTION & VENUE**

1. This Court has diversity jurisdiction over this lawsuit.

2. At all times material hereto, the Plaintiff, JENNIFER LYNN INGHAM SHELLEY ("Plaintiff"), was and is an individual and citizen of Miami-Dade County, Florida and is otherwise *sui juris*.

3. At all times material hereto, SOURCED SINGULARITY, LLC, (the "Company"), was and is an active Limited Liability Company, with a principle address of 8011 SW 175 Street, Palmetto Bay, Florida 33157.

4. At all times material hereto, Defendant, OTIS RAY JACOBS, V., ("Jacobs"), was and is an individual and citizen of Fallbrook, California.

5. At all times material hereto, Defendant, SEAN LAMONT HAMILTON, ("Hamilton"), was and is a citizen of Burnsville, North Carolina.

6. At all times material hereto, ERNEST SMITH, ("Smith"), was a member of the Compnay and was and is a citizen of Birmingham, Alabama.

7. Smith is identified in this action for notice purposes; Smith does not oppose the relief sought herein.

8. Plaintiff and Defendants, Jacobs, Hamilton, and Smith are identified by the Florida Secretary of State, Division of Corporations as members of the Company with their address being 8011 SW 175 Street, Palmetto Bay, Florida 33157.

9. Venue is proper in the U.S. District Court for the Southern District of Florida, Miami Division because it is the District where the actions giving rise to the claims occurred.

10. This Court has specific jurisdiction over the dispute and these Defendants because:

    a. the actions and breaches concern a Florida limited liability company with its headquarters in Miami-Dade County, Florida; and

    b. the Defendants Hamilton and Jacobs failed to make the necessary transfers and/or payments to the Company in in Miami-Dade County, Florida.

11. The amount in controversy is met because the value of the money or services at issue exceeds $75,000.00.

## FACTUAL BACKGROUND

12. On January 21, 2022, Plaintiff purportedly entered into an Operating Agreement (the "Agreement") with Jacobs, Hamilton, (collectively "the Defendants") and Ernest Smith ("Smith") to form the Company.[1]

> IN WITNESS WHEREOF, the Members have executed and agreed to this Limited Liability Company Operating Agreement, which shall be effective as of January 04, 2022.
>
> By: _[signature]_  Date: 01/21/2022
> Otis Ray Jacobs V
>
> By: _[signature]_  Date: 01/21/2022
> Jennifer Lynn Ingham Shelley
>
> By: _[signature]_  Date: 01/21/2022
> Ernest Lee Smith Jr.
>
> By: _Sean Lamont Hamilton_  Date: 01/21/2022
> Sean Lamont Hamilton

*See* Exhibit 1.

13. Pursuant to the Company's Operating Agreement, the Company was formed as a Florida limited liability on January 4, 2022 (Ex. 1).

14. The Operating Agreement provides the following with regard to initial contributions:

> "**Initial Contribution.** Each Member shall make an Initial Contribution to the Company. The Initial Contributions of each shall be as described in Attachment A, Initial Contributions of the Members.

---

[1] Ernest Smith is not a party to this lawsuit.

3

104920-2

> No Member shall be entitled to interest on their Initial Contribution. Except as expressly provided by this Agreement, or as required by law, no Member shall have any right to demand or receive the return of their Initial Contribution. Any modifications as to the signatories' respective rights as to the receipt of their initial contributions must be set forth in writing signed by all interested parties." (emphasis added) (section III(B), page 6).

(Ex. 1)

15. The Operating Agreement delineates the initial contribution that each Member must make for the Member to acquire their Units and thus acquire their interest in the Company.

16. Attachment A of the Operating Agreement reads as follows:

> The Initial Contributions of the Members of Sourced Singularity LLC are as follows:
>
> The Olympus Company/Otis Ray Jacobs V
>     Contribution:
>     Intellectual Property/Concept/ Marketing/Sales valued at $100,000.00
>
> Nextjen Co./Jennifer Lynn Ingham Shelley
>     Contribution:
>     Cash: $33,000.00
>
> Plutonomic Concepts LLC/Ernest Lee Smith Jr.
>     Contribution:
>
> Digitalmigrant LLC/Sean Lamont Hamilton
>     Contribution:
>     IP Development valued at $160,000.00

(Ex. 1)

17. The Plaintiff was the only individual to tender an initial cash contribution to the Company.

18. Plaintiff has provided a contribution to the Company in the form of cash in the amount of Thirty-Three Thousand Dollars and Zero Cents XX/100 ($33,000.00) ("Plaintiff's Initial Contribution").

19. To date, Defendants have failed to provide any contribution and/or services to the Company that each respectively agreed to provide as required by the Operating Agreement.

20. Additionally, the Plaintiff was is unable to access any of the portably corporate technology, emails, Google Drive, and CRM's that were being produced or maintained by Defendants Hamilton and Jacobs .

21. No documents exist that provide for any legal assignment of any of the following property of the company:

    a. Defendant Jacobs' Initial contribution of "Intellectual Property/Concept/Marketing Sales" valued at $100,000.00; or

    b. Defendant Hamilton's Initial Contribution of IP Development valued at $160,000.00.

22. In addition to Plaintiff's Initial Contribution, Plaintiff loaned Four Hundred Sixty Seven Thousand XX/100 Cents ($467,000.00) to the Company.

23. The Operating Agreement contains the following provision regarding member loans, in Article III, Paragraph A(6) titled "Member Loans."

> "The Company may, with the consent of the Initial Members, borrow money from a Member (or an Affiliate of a Member) to fund the ongoing operations and meet the expenses of the Company, on such terms and conditions as are reasonably deemed appropriate by the Board of Managers. **Except as otherwise agreed in writing between the Initial Members and the Company, all amounts advanced to the Company by the Initial Members shall be recorded as loans on the books and records of the Company and shall not be deemed capital contributions.** The repayment of any such loans shall take priority over any distributions: out of Net Cash Flow, pursuant to a dissolution hereof, or otherwise." (emphasis added)

(Ex. 1

24. Upon information and belief, Defendants Hamilton and Jacobs withdrew the Plaintiff's Initial Contribution, as well as One Hundred Sixty Seven Thousand and 00/100 Cents ($167,000.00) of Plaintiff's loan to the Company from the Company bank accounts.

104920-2

25. Plaintiff demanded that Defendants Jacobs and Hamilton comply with their agreement to assign "Intellectual Property/Concept/Marketing Sales" valued at "$100,000.00" and "IP Development" valued at "$160,000.00" to the Company.

26. Defendants Jacobs and Hamilton refused to produce any evidence of assignment of "Intellectual Property/Concept/Marketing Sales" at "$100,000.00" and "IP Development" valued at "$160,000.00" to the Company.

27. In response, the Plaintiff has recalled the remaining balance of her loan to the Company in the amount of Three Hundred Two Thousand XX/100 Cents ($302,000.00).

28. The Company's Treasurer, Defendant Smith, confirmed that:

   a. No transfers were made to the Company by Defendants Jacobs and Hamilton;

   b. Defendants Jacobs and Hamilton did not provide labor or assets to the Company;

   c. No intellectual property, concepts, or marketing sales valued at One Hundred Thousand Dollars ($100,000.00) were ever transferred to the Company by Defendant Jacobs or Hamilton;

   d. the Company does not own any intellectual property, concepts, marketing value or IP development purported to be transferred by Defendants Jacobs or Hamilton;

   e. Plaintiff's loaned the Company Four Hundred Sixty Seven Thousand Dollars ($467,000.00);

   f. No portion of the Plaintiff's loan was repaid; and

   g. The remaining balance of Plaintiff's loan could and was recalled.

29. The Company currently owns no assets.

30. More than Two-Hundred Thousand Dollars XX/100 Cents ($200,000.00) of Plaintiff's money has bene expended with no evidence that the sums were used to the benefit of the Company.

31. Plaintiff has retained legal counsel to pursue this action.

32. Plaintiff has agreed to pay her legal counsel a reasonable hourly fee and reimburse counsel for the costs incurred in prosecuting this action.

33. This Court has the power to award attorney fees and costs pursuant to section 415.111, Fla. Stat. (2019).

34. This Court also has the power to award attorney fees and costs pursuant to section 709.2120(5), Fla. Stat.

## COUNT ONE
### (BREACH OF CONTRACT: RESCISSION OF THE OPERATING AGREEMENT)

35. Plaintiff readopts and re-alleges paragraphs 1 through 34 as if fully set forth and incorporated herein.

36. Plaintiff and Defendants entered into the Operating Agreement to form the Company.

37. The mutual consideration to form the binding contract under the terms of the Operating Agreement required the Plaintiff and Defendants to make their respective initial contributions to the Company.

38. The Plaintiff made her Initial Contribution to the Company.

39. Defendant Hamilton did not make his Initial Contribution to the Company therefore; he breached the contract with the Plaintiff.

40. Defendant Jacobs did not make his Initial Contribution to the Company therefore; he breached the contract with the Plaintiff.

104920-2

41. The Plaintiff has and continues to suffer damages as a result of Defendants Jacobs' and Hamilton's breaches as she has not received the benefit of her bargain.

42. Specifically, the Plaintiff agreed to form a Company that would benefit and utilize the Initial Contributions of Defendants Jacobs and Hamilton to generate business income and sales.

43. Because Defendants Jacobs and Hamilton did not make their Initial Contributions, the Company has been unable to generate business income and sales or even get off the ground.

44. As a direct and proximate result of Defendants Jacobs and Hamilton breaches of the contract, the Plaintiff has suffered damages in the form of compensatory, consequential and special damages.

45. The only meaningful way to restore the Plaintiff to a position as if the Defendants Jacobs and Hamilton had not breached their agreement to make Initial Contributions to the Company would be to rescind the Operating Agreement restore the sums deposited as an Initial Contribution and loan by the Plaintiff.

WHEREFORE Plaintiff, JENNIFER LYNN INGHAM SHELLEY as a member of SOURCED SINGULARITY, LLC, respectfully demands that this Honorable Court enter judgment in her favor and against the Defendants, rescind the Operating Agreement, and award her damages, prevailing party attorney fees and costs, and such other and further relief as is just and proper.

104920-2

Respectfully submitted on this 22nd day of August, 2022 by,

*/s/ Brandon J. Hechtman*
Brandon J. Hechtman, Esquire
Florida Bar. No. 88652
WICKER SMITH O'HARA MCCOY & FORD, P.A.
Attorneys for Plaintiff
2800 Ponce de Leon Boulevard
Suite 800
Coral Gables, FL  33134
Phone: (305) 448-3939
Facsimile: (305) 441-1745
BHechtman@wickersmith.com